**NOT FOR PUBLICATION**                                              **CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
HOWARD SLAFER,                      :
                                    :
            Plaintiff,              :     CIVIL ACTION NO. 07-330 (JAP)
                                    :
    v.                              :
                                    :     **OPINION**
KONICA MINOLTA BUSINESS             :
SOLUTIONS U.S.A., INC.,             :
                                    :
            Defendant.              :
_____ :

APPEARANCES:

Michael. H. Neischmidt, Esq.
Nieschmidt Law Office
412 Monmouth Street
P.O. Box 971
Hightstown, New Jersey 08520
    *Attorney for Plaintiff, Howard Slafer*

Richard S. Zackin, Esq.
Gibbons P.C.
One Gateway
Newark, New Jersey 07102
    *Attorney for Defendant, Konica Minolta Business Solutions U.S.A., Inc.*

Pisano, District Judge:

Plaintiff Howard Slafer brings his one-count complaint under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1101 *et seq.* ("ERISA") against his former employer, Defendant Konica Minolta Business Solutions U.S.A., Inc. ("Konica"), alleging that Konica wrongfully disregarded almost six years of his service time rendered prior to Konica's adoption

of its first employee benefit plan in 1977 ("the Plan").

Slafer filed the instant complaint with the Superior Court of New Jersey, Mercer County, on or around November 8, 2006. Konica removed the action to this Court on January 19, 2007. The case was referred to an arbitrator pursuant to Local Civil Rule 201.1, and plaintiff thereafter requested a *de novo* trial. In the Final Pretrial Order in this case, the parties agreed to bifurcate the issues of liability and damages for trial, and further agreed to have the case decided on the administrative record as supplemented by selected deposition testimony.[1] The following findings of fact are taken therefrom.

After careful consideration of the extensive record before it, the Court sets forth herein its findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), and finds in favor of Defendant Konica.[2]

---

[1] In making its findings of fact, the Court has considered the following evidence from Plaintiff: Minolta's original pension Plan and an actuarial report evaluating the original Plan, provided by Peat, Marwick, Mitchell & Co.; Minolta's Amended Plan; a letter dated November 10, 1989 from Thomas McVeigh to Plaintiff Slafer detailing his forthcoming pension benefits and supporting calculations; a letter dated May 14, 2004 from Donna Gannon to Plaintiff Slafer explaining his pension benefit and the exclusion of his Period I service in the benefit calculations; Defendant Konica's Answers to Plaintiff's First Set of Interrogatories; a letter dated May 8, 2007 from Defense Counsel to Plaintiff's Counsel setting forth Slafer's annual salary amounts from his Minolta employment; and selections from transcript of Thomas McVeigh's January 16, 2008 deposition.
    The Court has considered the following evidence submitted by Defendant: Minolta's original pension Plan; Minolta's Amended Plan; selections from transcript of Thomas McVeigh's January 16, 2008 deposition; Trust Agreement for Minolta pension plan; 2003 Amendment to the Plan; a letter dated November 10, 1989 from Thomas McVeigh to Plaintiff Slafer detailing his forthcoming pension benefits and supporting calculations; a letter dated March 31, 2004 from Debra Vesley to Donna Gannon; a letter dated April 6, 2004 from Donna Gannon to Plaintiff Slafer explaining his pension benefit; a letter dated May 14, 2004 from Donna Gannon to Plaintiff Slafer explaining his pension benefit and the exclusion of his Period I service in the benefit calculations; and a personnel record for Plaintiff Slafer.

[2] The Court addresses the entirety of the action on its merits.

I.      **Factual Background**

Plaintiff Howard Slafer was an employee of Minolta Corporation ("Minolta"), Konica's predecessor,[3] from July 22, 1969 through February 1, 1975 ("Period I"). Minolta rehired Slafer the following year, on June 1, 1976, and Slafer voluntarily left the company on May 2, 1988 ("Period II").

A.      **The Plan**

Throughout Period I, Minolta had no pension plan in place for its employees. The company's first defined benefit plan established under ERISA (the "Plan"), was implemented on April 1, 1977 and was amended and restated on January 1, 1985. (Zackin Certif., Ex. A.) Under the Plan, a committee of Minolta's Board of Directors was entrusted with the authority to "control the management, operation and administration of the Plan . . . [including the duty to] construe and interpret the Plan in accordance with uniform rules and regulations[; and to] decide the eligibility of any persons to be covered under the Plan, determine the right of any person to a [retirement] Benefit, and determine the amount, manner and time of payment of any Benefit." (Zackin Certif., Ex. C § 8.03(a), (b).)

Under Section 1.08 of the original plan, for purposes of determining an employee's vesting and eligibility for benefits, "years of service" includes any year in which the participant earned 1000 hours of service after the Plan's April 1, 1977 Effective Date and "for service prior to the Effective Date[,] the latest period of service as an Employee prior to the Effective Date." (*Id.*) The original Plan contains no reference to breaks in service prior to the Plan's effective date, and does not define "latest period of service." However, under Section 1.39 of the

---

[3]     The companies merged in 2003. (Zackin Certif., Ex. E.)

Amended Plan, when determining an employee's years of service for which benefits are calculated, "[f]or years ending prior to the Effective Date, Years of Service shall include those years of service which would have constituted the latest period of service as an Employee." (Zackin Certif., Ex. A § 1.39(a).)  As with the original Plan, there is no definition of a participant's "latest period of service."

There are provisions for "normal retirement" benefits and "early retirement" benefits under both versions of the Plan.  (*See id.* § 4.02; Zackin Certif., Ex. C § 4.02.)  A participant's "accrued benefit" is the total "retirement benefit" at the "normal retirement date" (i.e. the date on which the participant reaches the age of sixty-five).  The "Deferred Vesting Retirement Benefit", apparently what Slafer received, is the participant's accrued benefit multiplied by a different percentage depending on the participant's years of service.  For example, a participant who has earned twelve years of service would be entitled to seventy (70) percent of his or her accrued benefit.  (*Id.* § 5.03.)  The original Plan also mandates that in the event of a Plan amendment, "each Participant's vested percentage in his Accrued Benefit shall be not less than his vested percentage computed under" the original Plan.  (*Id.* at § 4.04(a).)

### B. Slafer's Second Period of Employment with Minolta

When Slafer returned to Minolta in 1976, the Plan had not yet been implemented. However, Slafer was included as a Plan participant as of the Plan's effective date, April 1, 1977. Slafer remained a Minolta employee through May 2, 1988.

After his departure from Minolta, Slafer received a letter dated November 10, 1989 from Thomas R. McVeigh, who was Minolta's Human Resources Manager at that time.  In that letter, which McVeigh testified was a form letter sent to all departing employees (Zackin Certif., Ex. B

at 37), McVeigh advised Slafer of his vested pension rights and included documentation supporting the calculations. (Zackin Certif., Ex. F.) These documents describe Slafer's service with Minolta as commencing on June 1, 1976 and terminating on May 2, 1988, or for Period II only. (*Id.*) The letter makes no reference to Slafer's Minolta employment during Period I. The letter states that in the event Slafer returned to Minolta, his "years of service and accrued benefit shall be restored in full." (*Id.*)

    Slafer reached the age of sixty-five in 2004. Under the Plan, normal retirement benefits commence when the plan participant reaches sixty-five. (Zackin Certif., Ex. A §§ 1.24, 1.25, 4.7.) Accordingly, Donna Gannon, the Konica/Minolta Plan Administrator, contacted Slafer on April 6, 2004 to provide him with his retirement benefit calculation and additional forms for Slafer to complete in order to begin receiving his pension benefits. (Zackin Certif., Ex. H.) Prior to contacting Slafer, Gannon had requested and received a calculation of Slafer's retirement benefit from Debra Vesely at Milliman USA, actuarial consultants Konica had engaged to handle benefits calculations. (Zackin Certif., Ex. G.) As did the November 10, 1989 letter, the benefit calculations designated June 1, 1976 as Slafer's hire date, May 2, 1988 as his departure date, and made no reference to Slafer's service at Minolta during Period I. (Zackin Certif., Ex. H.) Konica contacted Slafer again on May 14, 2004, apparently in response to plaintiff's inquiry (which was not submitted as evidence), to explain that Slafer's employment during Period I was not considered in his benefits calculation because, "[Konica/Minolta's] Retirement Plan was not in effect until 1977 and had no provisions for breaks in service prior to that date[;] however it did have provisions for continuous service prior to 1977. Therefore, your prior years of service [(] 7/22/69 to 2/1/75) would not be considered." (Zackin Certif., Ex. I.)

## II. Conclusions of Law

This Court has jurisdiction to consider the instant suit pursuant to 29 U.S.C. § 1132(a)(1)(B). ERISA does not itself create pension plans, nor does it generally mandate what benefits are to be afforded under the plan, once created. *See Smith v. Contini*, 205 F.3d 597, 602 (3d Cir. 2000). "Thus, ordinarily only the plan can create an entitlement to benefits," and courts must "enforce the [p]lan as written unless [the court] find[s] a provision of ERISA that contains a contrary directive." *Id.* (internal quotations omitted). "When a plan is clear and unambiguous, a court must determine its meaning as a matter of law without looking to extrinsic evidence." *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 255 (3d Cir. 2009).

Where an ERISA plan gives the plan administrator discretionary authority to determine a participant's eligibility for benefits, the administrator's denial of benefits is reviewed under an abuse of discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).; *see also Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 281-82 (3d Cir. 2005) (where "the plan gives the administrator discretionary authority, [courts] review the administrator's exercise of that authority under an 'arbitrary and capricious' standard, and the administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan..") (internal citations and quotations omitted). The Minolta Plan authorizes the committee of the Board of Directors to have an Administrator determine a participant's eligibility and construe and interpret the Plan's provisions in accordance with prevailing law. The Administrator's decision to deny Slafer benefits based on service during Period I is therefore reviewed by this court under an arbitrary and capricious standard.

The Court finds as a matter of law that the Administrator's refusal to credit Slafer's Period I service in his pension benefit calculations was not arbitrary or capricious. First, the Court finds that no evidence exists to suggest that the Administrator's denial of Slafer's benefit request was discriminatory. Slafer alleges that he "has provided Defendant with the identity of any [*sic*] employee who represented to Plaintiff that Defendant bridged a break in service prior to April 1, 1977 for his accrual of benefits." (Pl.'s Tr. Br. at 4, Ex. P1; *see also* Compl. ¶ 14.) This disparate treatment, Slafer contends, demonstrates the arbitrary nature of the Administrator's denial. However, despite his repeated representations to the contrary, Slafer has failed to provide the Court with any evidence of this purportedly similarly situated individual, and the Court therefore finds that no such individual was afforded the treatment as Slafer describes.

Second, the Court finds that the Administrator's denial was not arbitrary or capricious under the plain language of the Plan. Under the language of the amended Plan, for purposes of calculating a participant's pension benefit, "Years of service [for years ending prior to the Effective Date] shall include those years of service which would have constituted the latest period of service as an Employee." (Zackin Certif., Ex. A § 1.39(a).) Slafer's Period I service terminated in 1975 and could not be rationally interpreted as constituting his "latest period of service" prior to the Effective Date when he was subsequently re-employed by Konica over one year later in 1976. The same result is required under the original plan as well, which stated that for services rendered prior to the Plan's 1977 effective date, "years of service" embraced only "the latest period of service as an Employee prior to the effective date." (Zackin Certif., Ex. C § 1.08.) Slafer's latest period of service as a Minolta employee prior to the Plan's effective date

was when Minolta re-employed him in 1976.

Finally, Slafer has failed to provide this Court with an alternative interpretation such that the Court could conclude that the Administrator acted arbitrarily in interpreting the Plan's language to exclude his Period I service. Instead, Slafer urges this Court to find that the Third Circuit's *DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 420 F.3d 220 (3d Cir. 2005) mandates a finding that Konica/Minolta's Plan Administrator abused her discretion by refusing to include Slafer's Period I service in Slafer's benefits calculations. In *DiGiacomo*, the Third Circuit examined the interaction between the vesting requirements of ERISA § 203 (that is, the rate at which an employee earns benefits) and the benefit accrual requirements of § 204 (that is, the process under which an employee's accrued benefits become the employee's property). At issue in *DiGiacomo*, but absent in the instant case, was whether ERISA permitted a forfeiture of the benefits that the employee had accrued prior to a break-in-service. In holding that § 204 requires plan administrators to include all service rendered while the employee was a participant in the plan in the accrual calculations, the Third Circuit held that even though § 203 permitted a plan to treat benefits earned pursuant to pre-ERISA employment as forfeited by a break-in-service for vesting purposes, the plaintiff, who had been a plan participant prior to an extended break in service, was entitled to have his pre-break employment included in his benefit calculations for accrual purposes. *Id.* at 223.

As Konica has argued, while it is true as a general matter that any accrued pension benefits are irrevocably the participant's property, *see In re Lucent Death Benefits ERISA Litig.*, 541 F.3d at 253 ("[a]n accrued pension benefit is protected by ERISA's anti-cutback provision without any showing that it has vested"), Slafer could not have accrued benefits during Period I

because he was not a participant in any recognized pension plan.  Although Slafer's break in service occurred before the passage of ERISA as in *DiGiacomo*, there, the Court found the employee was entitled to credit for benefits accrued under a pre-ERISA benefits plan that had been in place during the employee's pre-break service.  Plaintiff Slafer has failed to identify, and this Court is unaware of, any case in which an employee was entitled to benefits credit for a period of service preceding the employee's break in service where no pension plan existed before the employee's departure.  In one case, a plan administrator's denied benefits based on an employee's years of service with a predecessor company without a pension plan which was later acquired by the defendant company.  See *Mata v. E.I. DuPont De Nemours & Co.*, 456 F. Supp. 2d 612  (D. Del. 2006).  The court distinguished its facts from those presented in *DiGiacomo*, noting, "[a]lthough the court [in *DiGiacomo*] held that the defendant was required to credit [the plaintiff] with 'all years of service' in computing his accrued pension benefits, it was referring to all years of service rendered *under the employer's plan*, not service rendered for another employer."  *Id*., 456 F. Supp. 2d at 622 (internal quotations omitted) (emphasis supplied).   In sum, if there were an established benefits plan during Slafer's Period I tenure at Minolta, Slafer's reliance on *DiGiacomo* would be more persuasive because he would have been accruing benefits during that time under an existing plan.  However, there was no plan in place at any point during Slafer's Period I employment and Slafer, therefore, could not have accrued benefits under any plan during that time.

      For the reasons discussed above, this Court concludes that Konica's Administrator did not abuse her discretion in denying Plaintiff Slafer the benefits he seeks.  Accordingly, judgment is awarded to Defendant Konica, and denied as to Plaintiff Slafer.  An appropriate Order

accompanies this Opinion.

      /s/ Joel A. Pisano
      JOEL A. PISANO, U.S.D.J.

Dated: June 8, 2009